IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-

**O.K.., a minor, by and through her parents B.K. and J.K.**

Plaintiff,

v.

**JEFFERSON COUNTY SCHOOL DISTRICT R-1**

Defendant.

_____

**COMPLAINT AND JURY DEMAND**
_____

O.K., a minor, by and through her parents B.K. and J.K., through counsel Spies, Powers & Robinson, P.C., submits the following Complaint and Jury Demand.

**JURISDICTION AND VENUE**

1. This action arises under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12131; and the Rehabilitation Act, 29 U.S.C. § 794. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Venue is proper pursuant to 28 U.S.C. § 1391. All parties reside within the District of Colorado, and the events described in this Complaint occurred in the District of Colorado.

**PARTIES**

3. Plaintiff O.K. is a minor child who, at the time of the incident, was a fourteen year-old student at Wayne Clark Middle School, a public school in the Jefferson County School District. B.K. and J.K. are the father and mother, and next friends, of O.K. and are residents of Jefferson County,

Colorado.

4. Defendant Jefferson County School District R-1 ("School District") is a political subdivision of the state of Colorado.

## FACTUAL ALLEGATIONS

5. At the time of the incident, O.K. was a fourteen year-old student at Wayne Clark Middle School ("School"). During the 2019-2020 school year, O.K. attended the School's significant support needs ("SSN") classroom.

6. O.K. suffers from a traumatic brain injury ("TBI") and as a result has an intellectual disability and has very limited verbal communication abilities.

7. O.K. is an individual with disabilities within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

8. At the beginning of the 2019-2020 school year, O.K. was a very social and kind young woman who enjoyed attending School and helping her peers in the classroom.

9. The School District recognized that O.K. had difficulties with transitions - particularly transitions from School to the bus to home. As a result, the School District developed a behavior intervention plan ("BIP") to help address these transition difficulties. For example, the BIP required transportation staff to be made aware of the BIP as well as antecedent strategies designed to reduce any unwanted behaviors. One such strategy was to allow O.K. to look out the back window of the bus prior to her making her choice between two seats.

10. The BIP also detailed a Crisis Intervention Plan to be followed in the event O.K. became escalated. The Crisis Intervention Plan directed staff to follow standard CPI protocol. If O.K. became

escalated, staff should "not engage/talk to her until she has calmed down. Restraint should be used as an absolute LAST resort."

11. The Crisis Intervention Plan clearly stated that staff should "not block or touch [Student] on the bus." Instead, the plan reiterated that staff should "allow her to look out the back window before asking her to choose between her 2 seat options in the front."

12. The BIP required School District staff to contact Parents anytime Student became escalated, before taking any other action. Additionally, the BIP stated, in bold print, that "If Staff ever put's [sic] hands on [Student] in a hold for safety purposes, parent's [sic] request that they are notified immediately, no matter how long the hold is."

13. School District policy required O.K.'s case manager to inform the School District's Transportation Department ("Transportation") about O.K.'s BIP and Crisis Intervention Plan and to provide Transportation a copy of both documents.

14. While O.K.'s case manager informed Transportation that O.K. had a BIP and a Crisis Intervention Plan, the case manager did not provide Transportation a copy of either document.

15. At the end of the school day, O.K. was to be walked to the school bus by her special education teacher or her paraeducator shortly before the general education students were dismissed at 3:20 p.m. The special education teacher or paraeducator would help O.K. get settled into her assigned seat in the front row of the bus before they would exit the bus and leave O.K. in the supervision of the bus driver or the bus aide. If neither the bus driver nor the bus aide was present, the special education teacher or paraeducator would wait with O.K. on the sidewalk until Transportation staff arrived.

16. On the day of the incident, Friday, September 13, 2019, O.K.'s dismissal began in accordance

3

with her ordinary routine. O.K.'s paraeducator walked O.K. to her bus and watched O.K. take her assigned seat in the front row of the bus.

17. O.K.'s bus aide was on the bus, so paraeducator exited the bus once O.K. was seated. There was only one other student on the bus at that time. Paraeducator then waited on the sidewalk with some of O.K.'s classmates for another bus to arrive.

18. O.K. waved to her paraeducator from the bus window and then stood up from her seat and moved towards the aisle of the bus where the bus aide was standing.

19. Without provocation reason, the bus aide grabbed both of O.K.'s arms and pinned them behind her back. With O.K.'s arms pinned, the bus aide used his body to forcibly slam O.K. back into her seat. Once O.K. was in her seat, the bus aide proceeded to shove her towards the window. O.K. was visibly frightened and was screaming and crying.

20. O.K.'s backpack or lunchbox fell to the floor and the bus aide picked the item up and slammed it onto the seat next to her. When O.K. tried to stand up from her seat a second time, the bus aide violently placed O.K. in a headlock with his left forearm around O.K.'s neck.

21. The bus aide then threw O.K. to the floor of the bus, grabbed her and pulled her back towards him, before finally releasing her.

22. The bus aide's violent assault of O.K. caused physical injuries and inhibited O.K.'s ability to breathe.

23. The paraeducator heard O.K.'s cries and rushed onto the bus. Paraeducator found O.K. on the floor of the bus near the driver's seat with her hands covering her ears - scared and shaking. The paraeducator comforted O.K. and, ultimately, helped O.K. back to her seat.

24. No one from the School District reported the incident to Parents.

25. When O.K. arrived home from school following the incident, O.K. told her Parents (as best she could) that her throat or her neck hurt. Not knowing about the incident, Parents assumed that O.K. had a sore throat or other medical issue. Parents noticed that O.K. was unusually restless that weekend and had difficulty calming down.

26. On Monday, September 16, 2019, the paraeducator notified the School's Assistant Principal of the incident. The Assistant Principal then called Parents to inform them of the incident. Assistant Principal told Parents that the bus aide had "put his hands on" O.K. and threw her backpack at her.

27. During the call with the Assistant Principal, Parents asked whether the bus had a surveillance camera. Thereafter, Assistant Principal contacted Transportation to request that the video of the incident be pulled and retained. On September 25, 2019, Parents viewed the surveillance video at the Transportation Office. Between their initial notification of the incident on September 16, 2019 and the viewing of the video on September 25, 2019, Parents did not receive any further information from the School District regarding the incident.

28. On September 4, 2020, Parents filed a state-level complaint ("State Complaint") with the Colorado Department of Education ("CDE") for unlawful abuse and restraint in violation of, among other laws, Colorado's Protection of Individuals from Restraint and Seclusion Act, C.R.S. §26-20-101, *et seq.*[1]

29. The State Complaint was assigned to a State Complaints Officer ("SCO") who conduced a comprehensive investigation of the incidents - including the interview of numerous witnesses, the review of School District records and policies, the review of O.K.'s school records, and the analysis

---

[1] The Colorado Department of Education has authority to investigate violations of Colorado's Protection of Individuals from Restraint and Seclusion Act. 34 C.F.R. § 300.153(c); Rule 2620 R 2.07(2)(f).

of the video of the incident on the bus.

30. The SCO issued a decision on behalf of CDE on December 1, 2020. *See* SCO Decision attached as Exhibit 1.

31. Among other rulings, the SCO found that the School District, through its bus aide, made unlawful physical contact with O.K. and physically restrained O.K. in violation of Colorado's Protection of Individuals from Restraint and Seclusion Act. The SCO further found that the School District's use of physical force against O.K. was unjustified, unreasonable, and was used as a punitive form of discipline. The SCO found that the School District violated the law and O.K.'s civil rights in the following respects:

- Using restraint in a non emergency situation, in violation of Rule 2620 R 2.01(1)(a);
- Using restraint before the failure of less restrictive alternatives, in violation of Rule 2620 R 2.01(1)(b);
- Using restraint as a punitive form of discipline or as a threat to control of gain compliance of a student's behavior, in violation of Rule 2620 R 2.01(2);
- Failing to ensure that no restraint is administered in such a way that the Student is inhibited or impeded from breathing or communicating, in violation of Rule 2620 R 2.0(1)(a)(i);
- Failing to comply with the documentation and notification requirements, in violation of Rule 2620 R 2.04(3) and Rule 2620 R 2.04(4).

Exhibit 1, p. 15.

32. Notably, the SCO found that the School District's violations of the law and of O.K.'s rights did not result in a denial of a free appropriate public education ("FAPE") under the Individuals with

Disabilities Education Act ("IDEA"). While O.K. sustained serious physical and emotional injuries as a result of the incident, because the injuries did not result in a denial of a FAPE, Plaintiffs have not brought, and are not required to bring, a due process complaint under the IDEA for a failure to provide O.K. a FAPE. As a result, Plaintiffs are not required to exhaust IDEA's administrative remedies under 20 U.S.C. 1415(l).

## FIRST CLAIM FOR RELIEF
(Violations of the Americans with Disabilities Act- 42 U.S.C. § 12131)

33. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

34. Title II of the ADA prohibits public entities from discrimination on the basis of a disability. 42 U.S.C. § 12131(1)(B)).

35. O.K. is a qualified individual with a disability under the ADA. She has a TBI with cognitive and communication disabilities, which substantially limit her major life activities.

36. Through the School District's bus aide, the School District denied O.K. reasonable accommodations.

37. Because the School District's bus aide denied O.K. reasonable accommodations, the School District caused O.K. to suffer greater injury and indignity in those processes than other students.

38. The School District's bus aide knew that accommodations were necessary, but was indifferent to an obvious risk of not providing the accommodations.

39. The School District is liable for the actions of its bus aide because it employed the bus aide and the bus aide served as its agent.

40. The School District also denied O.K. the benefit of properly trained transportation staff at the School who would be trained to appropriately interact with students with disabilities and

reasonably accommodate those students.

41. The School District was on notice of the need for more or different training, but were deliberately indifferent to that need.

42. As a proximate result of the School District's actions and inactions, O.K. suffered physically and emotionally, and continues to experience fear, distrust, and anxiety regarding strangers and unfamiliar surroundings.

43. As a result of the School District's violations of Title II of the ADA, O.K. is entitled to compensatory damages, and reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Violations of the Rehabilitation Act- 29 U.S.C. § 794)

44. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

45. Section 504 of the RA forbids programs that receive federal financial assistance to discriminate against individuals with a disability solely because of their disability. 29 U.S.C. §794(a).

46. The School District receives federal financial assistance.

47. O.K. is a qualified individual with a disability under the Rehabilitation Act.

48. Through the School District's bus aide, the School District denied O.K. reasonable accommodations.

49. Because the School District's bus aide denied O.K. reasonable accommodations, the School District caused O.K. to suffer greater injury and indignity in those processes than other students.

50. The School District's bus aide knew that accommodations for O.K. were necessary, but were indifferent to an obvious risk of not providing the accommodations.

51. The School District's bus aide discriminated against O.K. solely as a result of her disability.

52. The School District is liable for the actions of its bus aide because it employed the bus aide and the bus aide served as its agent.

53. As a proximate result of the School District's actions and inactions, O.K. suffered physically and emotionally, and continues to experience fear, distrust, and anxiety regarding strangers and unfamiliar surroundings.

54. As a result of the School District's violations of Section 504 of the Rehabilitation Act, O.K. is entitled to compensatory damages, and reasonable attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### (Violations of the Fourth Amendment Pursuant to 42 U.S.C. § 1983)

55. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

56. The Fourth Amendment forbids unreasonable seizures, which include seizures carried out with excessive force.

57. The School District's bus aide used excessive force in seizing and restraining O.K. in violation of O.K's Fourth Amendment rights by forcibly pinning O.K.'s hands behind her back and physically shoving her into her seat; violently placing O.K. in a headlock with his forearm around her neck, thereby preventing O.K.'s ability to move her torso or neck and inhibiting her ability to breathe or communicate; and throwing O.K. to the floor of the bus and yanking her by the arm back into her seat.

58. The School District's bus aide unreasonably and unconstitutionally seized O.K. and used excessive force in light of the totality of the circumstances, including but not limited to:

- That O.K. had not engaged in any criminal activity;

- That O.K. posed no physical threat to anyone;

- That O.K. was not attempting to flee school grounds;

- O.K.'s age, size, and disabilities;

- The failure of the School District's bus aide to appropriately approach and handle a child of O.K.'s age, size, and with O.K.'s disabilities; and

- The School District's bus aide's aggressive and threatening actions that prompted O.K. to emotionally escalate and become injured.

59. O.K.'s right to be free from unreasonable seizure and excessive force as described herein was clearly established at the time of the incident.

60. The School District and their employees and agents, namely Transportation staff, often interact with students with disabilities and thus the circumstances constituted a usual and recurring situation.

61. The School District failed to adequately train and supervise its Transportation staff despite foreseeable consequences of such failure, on appropriately interacting with children with disabilities. That deliberately indifferent failure to train was a proximate cause of the violations of O.K.'s Fourth Amendment rights.

62. As a proximate result of the School District's actions and inactions, O.K. suffered physically and emotionally, and continues to experience fear, distrust, and anxiety regarding strangers and unfamiliar surroundings.

63. O.K. is entitled to compensatory damages, punitive damages from the individual defendants, and reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for relief as follows:

(a) Compensatory damages from the School District;

  (b)  An award of reasonable attorney's fees and costs associated with this action on all claims allowed by law;

  (c)  Pre and post-judgment interest at the lawful rate;

  (d)  Any further relief that this Court deems just and proper in equity and at law.

## JURY DEMAND

Plaintiffs request a trial by jury in this matter.

Respectfully submitted on September 9, 2021,

            **SPIES, POWERS & ROBINSON, P.C.**

            */s/ Jack D. Robinson*
            _____
            Jack D. Robinson, #22037
            950 South Cherry Street, Suite 700
            Denver, Colorado 80246
            Telephone: (303) 830-7090
            Facsimile:  (303) 830-7089
            **Attorneys for Plaintiffs**